# Richmond.

## Hopkins v. Graff.

### March 19, 1903.

1. Wills—*Construction—Case in Judgment.*—Under the peculiar phrase-
ology of the will under consideration, which is too lengthy to be set
out, it is fairly plain that the dominant idea of the testator was that
if he survived his wife "the farm" was to go to the appellant, but
if his wife survived him it was to go to the appellee. As the latter
contingency occurred, the appellee is entitled to "the farm."

Appeal from a decree of the Circuit Court of Appomattox.
county, pronounced April 1, 1901, in a suit in chancery,
wherein the administrator of Geo. Upshur Graff, with his will
annexed, was the complainant, and the appellant and the ap-
pellee and others were the defendants.

*Affirmed.*

The opinion states the case.

*Blackford, Horsley & Blackford,* for the appellant.

*S. L. Ferguson,* for the appellee.

Whittle, J., delivered the opinion of the court.

The sole question presented by this appeal is whether, by a
proper construction of the will of George Upsher Graff, de-
ceased, appellant, Fannie Montell Hopkins, or appellee, Eleanor
Graff, is entitled to the real estate known as "The Farm,"
and the accumulated income therefrom.

To a decree of the Circuit Court of Appomattox county, re-

solving that question in favor of appellee, this appeal was allowed. It appears that testator's wife survived him, and that none of his nieces from Missouri lived with her after his death. It furthermore appears that the widow refused to acquiesce in an attempted disposition by testator of a policy in the Royal Arcanum, which he had taken out for her benefit, and to which the court decided that she was entitled.

The parts of the will affecting the matter in dispute (the paragraphs of which, for more convenient reference, will be numbered) are as follows.

(1) "Everything I may die possessed of I wish for the benefit of my wife during her life, for her to have a sufficiency for comfort and decency, and I think that for her personal wants two hundred dollars a year will be sufficient. If she should have one of my nieces from Missouri to stay with her after my death, then, of course, it will require more, which she is hereby privileged to use, asking her to husband the means I can leave her that she may never become dependent on charity, only for kindness and courtesy.

(2) "If, after both of our deaths, there may be anything left, I wish it to go to said niece who will be with her at time of death, or if none are with her who will be entitled to receive it, then, unless Mrs. Graff has otherwise disposed of it, but only to some member of my family, then I wish Fanny Montell Hopkins (formerly Graff) to inherit it. If the farm has not been sold, and will not require to be sold, I wish the farm to go to the residuary legatee, but only on condition that it shall never be sold for less than $10,000, full legal tender money of the United States. But if such price cannot be obtained, I desire Atwood (one of three persons named as executors) or his survivors, to rent it out for a term of years, for money rent preferred (unless the residuary legatee will live on it and care for it), and to pay said rental to the residuary legatee, during such time as may be necessary. . . .

(3) "If it should so happen that all three of the persons I have named (as executors) should die before the farm should be sold, then the residuary legatee to have the right to select her own agent for the management of the farm, after both of my own and Mrs. Graff's death, but only subject to conditions I have named, which constitute her the legatee. . . .

(4) "I recapitulate—I name Eleanor Graff, of Missouri, whether she be with my wife or not, at the time of her death, if said Eleanor be alive, to be the residuary legatee of the farm on conditions named before, and to get the income from the same, but if she be with her at the time of her decease, then to inherit all that I may leave. Should Eleanor not be with my wife at her death, then I wish all assets that may belong to my estate, other than the farm and belongings, to be inherited by my niece, Fanny Montell Hopkins (nee Graff), Baltimore, Md.

(5) "In the contingency of my wife dying before me, I wish to associate other of my nieces with her as to benefits from Royal Arcanum. Of course, they will come in, after her death, if before me, and such contingency will obviate the conditions I have named in this will for all belonging to my estate, except the farm. In that event any of my nieces, who may be entitled to benefits from the Royal Arcanum, will not share any other portion of my estate in that event where Fanny Montell Hopkins is named to receive all the estate left after the death of my wife, she will receive the income from the farm only till it can be sold at my limit, and then the whole amount of the sale shall go to her.

I again recapitulate—

(6) "First. *All* I leave to my wife during life, if she survive me.

(7) "Second. Should my wife die before me, then my niece or nieces associated with her, to inherit benefits from the Royal Arcanum will *not be entitled to any other part of my estate.*

(8) "Third.  The income from farm and all other property
to be for the benefit of Fannie Montell Graff, if she be alive,
or to any heirs of her body, who may survive her, after the
death of my wife. . . .

(9) "Fearing this.paper may not be understood, as I wish
it to be, I will explain further.  If my wife survive me and the
benefit due her from the Royal Arcanum be collected, all debts
due by me or my estate, after expenses for cremation, to be
first paid.  If she survive me I think the matter plain.  If I
can get the names of any nieces included for benefits from the
Royal Arcanum, they will only share after the death of my
wife, if she survive me (but if my wife should die before me,
after paying all debts and expenses, then they will share be-
tween them, if both alive, or the survivor, all that may be left
to my estate, except the farm and the painting in Baltimore,
which will go to my niece, Fanny Montell Hopkins, if alive, or
to any issue of her body—if none, then all to go to my nieces
from Missouri, whether with my wife or not."

While it is apparent that this will was written by a most un-
skilful draftsman, who has expressed his meaning in an in-
volved and obscure manner—nevertheless, it is believed that,
by careful scrutiny, the intention of the testator can be dis-
covered.

It will be observed that by paragraph 1 testator manifests
an intention that his wife shall enjoy the whole estate for life,
subject to the support of one of his nieces from Missouri, in the
event she should come on and stay with her.  While paragraphs
2, 3 and 4 evince a desire that, after the death of the wife, the
farm shall pass to the residuary legatee, and paragraph 4 de-
clares the residuary legatee to be appellee, Eleanor Graff.

These paragraphs are all predicated of *the wife surviving tes-*
*tator.*  In which event, in paragraph 4, testator, with both ap-
pellee and appellant *in mind,* devises the farm to the former;
and, if she should not be staying with his wife at the time of her

death, bequeathes all his estate, "other than the farm and its belongings," to appellant. He thus manifests an unmistakable intention, with the rival claimants both in contemplation, that appellee shall have the farm provided his wife survives him.

By paragraph 5, on the other hand, testator declares that in the event of his wife predeceasing him, appellant (instead of the legacy given her by paragraph 4) shall "receive the increase from the farm only till it can be sold at my limit, and then the whole amount of the sale shall go to her."

Testator prefaces his adherence to that scheme for the disposition of his property, with the language, "I again recapitulate," and proceeds by paragraph 6, to give a life estate to his wife, if she should survive him; by paragraph 7, to give his niece or nieces, associated with his wife (evidently the Missouri nieces), should he survive her, the policy in the Royal Arcanum, and no other part of his estate; and, by paragraph 8, to give the farm to appellant.

In the light of the preceding paragraphs and the prefatory language quoted, it would seem that this *recapitulation*, is intended to emphasize, and not to depart from testator's previously declared plan for the disposition of his estate. And that view is still further strengthened by the ultimate declaration and latest expression of testator's mind and will, in regard to the bestowal of the farm, embodied in paragraph 9. In that paragraph, after intimating that "the paper may not be understood, as I wish it to be," he reiterates his intention that, should *he survive his wife*, the farm should go to appellant. It thus appears, with reasonable certainty, that, for some unexplained reason, the dominant idea of testator was: If *he survived his wife*, the farm should go to appellant; but if *his wife survived him*, it should go to appellee. As remarked, the former contingency did not occur.

The decree of the Circuit Court, which so construed the will, is, therefore, without error, and must be affirmed.

*Affirmed.*